**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MARI ELI S.D., on behalf of S.Y.C.S., a minor,

                              Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,          No. 5:23-CV-00314
                                      (BKS/CFH)

                              Defendant.
_____

**APPEARANCES:**                   **OF COUNSEL:**

Olinsky Law Group                 HOWARD D. OLINSKY, ESQ.
250 South Clinton Street – Suite 210
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration         GEOFFREY M. PETERS, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Mari Eli S.D.[2] ("plaintiff") brings this action on behalf of her minor son, S.Y.C.S.

("claimant"), pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the

Commissioner of Social Security ("the Commissioner") denying her application for

---

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in accordance with General Order 18 and Local Rule 72.3(d).  See Dkt. No. 6.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

supplemental security income ("SSI").  See Dkt. No. 1.  Plaintiff moves for a remand for

a calculation of benefits, and alternatively requests that the Commissioner's final

decision be vacated and remanded for further proceedings.  See Dkt. No. 16.  The

Commissioner moves for the Commissioner's decision to be affirmed.  See Dkt. No. 17.

Plaintiff filed a reply.  See Dkt. No. 18.  For the following reasons, it is recommended

that plaintiff's motion be granted, and the Commissioner's decision be reversed and

remanded for further proceedings.


## I. Background

On May 10, 2012, plaintiff filed an application for SSI benefits on behalf of

claimant.  See T. at 246-51.[3]  Claimant, then age 4, was found disabled as of May 1,

2012, due to a speech and language delay and a learning disorder.  See id. at 61-68,

77-83, 110.  In March 2017, a disability hearing officer conducted a continuing disability

review and concluded that, as of December 1, 2016, claimant was no longer disabled

because of "significant medical improvement."  Id. at 59, 110-14.  This determination

was upheld upon reconsideration.  See id. at 107.  Plaintiff appealed and requested a

hearing, see id. at 121, and a hearing was held before Administrative Law Judge ("ALJ")

Bruce S. Fein on July 3, 2018.  See id. at 33-57.  On November 6, 2018, ALJ Fein

issued an unfavorable decision.  See id. at 8-26.

Plaintiff timely filed a request for review by the Appeals Council.  See T. at 242-

45.  On September 20, 2019, the Appeals Council denied plaintiff's request for review.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.
See Dkt. No. 10.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand
corner of the page.

See id. at 1-3.  Plaintiff timely commenced an action before this Court.  See id. at 699-700.  On March 27, 2020, United States Magistrate Judge Daniel J. Stewart reversed the Commissioner's decision and remanded for further proceedings per stipulation between the parties.  See id. at 706-09.  On June 17, 2020, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings, specifically noting:

> In evaluating the claimant's functioning, the Administrative Law Judge concludes the claimant has less than marked limitations in acquiring and using information and health and physical well-being and no limitations in attending and completing tasks, interacting and relating with others, moving about and managing objects, and caring for himself. However, the record contains later reports from 2017 and 2018, which seemed to demonstrate a worsening in the claimant's functioning.  In particular, the Teacher Questionnaire from October 2017 [and the opinion of Mihal Simionescu, M.D., from November 2017], found serious problems [and limitations] . . . These opinions of greater limitation appear to be corroborated by the August 2017 findings from the school psychologist[.] . . . Therefore, further evaluation is warranted.

Id. at 665-66.  The Appeals Council instructed the ALJ to (1) "[a]ttempt to obtain updated school records and, if warranted and available, obtain a consultative mental status examination and medical source statements regarding the child's ability to perform age-appropriate activities"; (2) "[f]urther consider the severity of the claimant's impairments and, in determining functional equivalency, address each pertinent domain pursuant to 20 CFR 416.926a and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations"; and (3) "[i]f necessary and available, obtain evidence from a pediatric medical expert to clarify the nature and severity of the claimant's impairments[.]"  Id. at 666.

ALJ Kenneth Theurer held a hearing on October 2, 2020, and a supplemental hearing on April 2, 2021.  See T. at 623-62.  The ALJ issued an unfavorable decision on April 12, 2021.  See id. at 591-613.  Plaintiff bypassed written exceptions and, again, commenced an action before this Court.  See id. at 1150-56.  On April 5, 2022, United States District Judge Lawrence E. Kahn reversed the Commissioner's decision and remanded for further proceedings per stipulation between the parties.  See id.  On June 8, 2022, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings, specifically noting that "the hearing decision did not evaluate whether the child claimant's impairments functionally equaled the Listings in the domain categories for each of the age categories applicable to the claimant during the adjudicated period [and, thus, f]urther evaluation is required."  Id. at 1159.  The Appeals Council instructed the ALJ, upon remand, to (1) "[o]btain additional evidence concerning the child claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence"; and (2) "[f]urther evaluate whether the child claimant's disability is continuing or has ended in accordance with 20 CFR 416.994a[.]"  Id. at 1159-60.

On December 16, 2022, ALJ Theurer held a hearing.  See T. at 1103-15.  On January 6, 2023, the ALJ issued an unfavorable decision.  See id. 1067-90.  Plaintiff bypassed written exceptions, and the Appeals Council did not assume jurisdiction within sixty days, making the ALJ's determination the final decision of the Commissioner.  See id.; see also 20 C.F.R. § 416.1484(c),(d).  Plaintiff timely commenced this action on March 8, 2023.  See Dkt. No. 1.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); see also Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); see also Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be

sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Continuing Disability Review

To initially qualify as disabled under the Social Security Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. See Encarnacion ex rel. George v. Astrue, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.'" Id. (quoting 20 C.F.R. § 416.924(a)). "Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.'" Id. (quoting 20 C.F.R. § 416.924(c)). "Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." Id. (citing 20 C.F.R. § 416.924(d)).

"Once there has been a finding of disability, a claim is reviewed periodically to assess if there has been medical improvement." Roxanne H. o/b/o A.H. v. Comm'r of Soc. Sec., No. 6:20-CV-06688 (EAW), 2022 WL 4493931, at *2 (W.D.N.Y. Sept. 28, 2022) (citing 20 C.F.R. § 416.994a(a)(1) ("There is a statutory requirement that, if you are eligible for disability benefits as a disabled child, your continued eligibility for such

benefits must be reviewed periodically.")).  An ALJ follows a different three-step "medical improvement review standard (MIRS) sequential evaluation" to determine whether a child continues to be entitled to SSI benefits.  SSR 05-03P, 2005 WL 6491605, at *1 (Apr. 27, 2005).

At the first step of the continuing disability review, the ALJ "determine[s] whether there has been medical improvement in the impairment(s) [that the claimant] had at the time of [the] most recent favorable determination or decision," also known as the comparison point decision ("CPD").  20 C.F.R. § 416.994a(b)(1).  "Medical improvement is any decrease in the medical severity of [the] impairment(s) [that] was present [and documented] at the time of the [CPD]."  Id. § 416.994a(c).  "Although the decrease in severity may be of any quantity or degree, . . . minor changes in . . . signs, symptoms, and laboratory findings" are disregarded.  Id.  "If there has been no medical improvement," then the claimant continues to be disabled, "unless one of the exceptions to medical improvement . . . applies."  Id. § 416.994a(b)(1).  "If there has been medical improvement, [the ALJ will] proceed to step [two]."  SSR 05-03P, 2005 WL 6491605, at *1 (Apr. 27, 2005).

At step two, the ALJ must determine "whether the [claimant's] CPD impairment(s) still meets or medically or functionally equals 'the severity of the listed impairment' that it met or equaled at the time of the CPD."  SSR 05-03P, 2005 WL 6491605, at *1 (Apr. 27, 2005) (quoting 20 C.F.R. § 416.994a(b)(2)).  "If the CPD impairment(s) still meets or medically or functionally equals the severity of the listing [that the ALJ] considered at the CPD, [the ALJ will] find that the child is still disabled."  Id.  "If the CPD impairment(s)

does not still meet or equal the severity of that listed impairment, [the ALJ will] proceed to step [three]."  Id.

Lastly, at step three, the ALJ must determine whether the claimant is disabled, considering all the impairments that the claimant has now, including any not present or not considered at the CPD.  See 20 C.F.R. § 416.994a(b)(3).  The ALJ "determine[s] if the child's current impairment is severe."  SSR 05-03P, 2005 WL 6491605, at *1 (Apr. 27, 2005).  "[A] medically determinable impairment" is not severe if it "is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations."  20 C.F.R. § 416.924(c).  "If the impairment(s) is not severe, [the ALJ will] find that the child's disability has ended."  SSR 05-03P, 2005 WL 6491605, at *1 (Apr. 27, 2005).  "If the impairment(s) is severe, [the ALJ will] consider whether it meets or medically equals a listing."  Id. (citing 20 C.F.R. §§ 416.924(d), 416.925, 416.926).  "If it does, [the ALJ will] find that the child's disability continues."  Id.  "If not, [the ALJ will] consider whether it functionally equals the listings."  Id. (citing 20 C.F.R. § 416.926a).  "If it does, [the ALJ will] find that the child's disability continues[; i]f not, [the ALJ will] find that the child's disability has ended."  Id.; see 20 C.F.R. § 416.994a(b)(3)(iii); see also Roxanne H. o/b/o A.H., 2022 WL 4493931, at *2.

In determining "whether [an] impairment or combination of impairments functionally equals the listings," the ALJ will assess the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b). "For a child's impairment to functionally equal a listed impairment, the impairment must

'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" Encarnacion, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)).  "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities."  Id. (internal quotation marks and citations omitted).  "An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities."  Id. (internal quotation marks and citations omitted).

### III. The ALJ's Decision

Prior to applying the three-step MIRS sequential evaluation, the ALJ first noted that "[t]he most recent favorable medical decision finding that the claimant was disabled is the determination dated December 12, 2012[, which] is known as the 'comparison point decision' or CPD."  T. at 1077.  The ALJ further noted that, "[a]t the time of the CPD, the claimant had the following medically determinable impairments: learning disorder and speech/language impairment[,]" which "were found to functionally equal the listings (20 CFR 416.924(d) and 416.926a)."  Id.

At step one, the ALJ determined that "[m]edical improvement occurred as of December 1, 2016[,]" as "there had been a decrease in medical severity of the impairments present at the time of the CPD."  T. at 1077 (citing 20 C.F.R. § 416.994a(c)).  At step two, the ALJ found that "[s]ince December 1, 2016, the impairments that the claimant had at the time of the CPD have not functionally equaled the Listing of Impairments[.]"  Id. at 1079 (citing 20 C.F.R. §§ 416.994a(b)(2), 419.926a, and SSR 05-03P).  Prior to reaching step three, the ALJ noted that "[s]ince December 1,

2016, the claimant has had the following severe impairment: attention deficit hyperactive disorder." Id. at 1088 (citing 20 C.F.R. § 416.924(c)). At step three, the ALJ determined that "[s]ince December 1, 2016, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926)," or "an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a)." Id. at 1089-90. The ALJ, therefore, concluded that "[t]he claimant's disability ended as of December 1, 2016, and the claimant has not become disabled again since that date." Id. at 1090.

## IV. Discussion

### A. The Parties' Arguments[4]

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. See Dkt. No. 16 at 10, 12-15. Specifically, plaintiff contends that "[t]he ALJ failed to provide legitimate reasons for rejecting the medical opinion of treating psychiatrist Mihal Simionescu, M.D., the fourth grade teacher's questionnaire in Exhibit 16E, and the sixth grade teachers' questionnaire in Exhibit 36E." Id. at 9. The Commissioner asserts, however, that "[s]ubstantial evidence supports the ALJ's decision finding that, as of December 1, 2016, medical improvement had occurred and [p]laintiff was no longer disabled from his impairments." Dkt. No. 17 at 8. Specifically, the Commissioner argues that (1) "the ALJ reasonably gave little weight to Dr. Simionescu's opinion"; and (2) "[p]laintiff's teachers are non-medical sources under the regulations and, thus, their

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

opinions do not demand the same deference as a physician's opinion," but, nevertheless, "contrary to [p]laintiff's objections, the ALJ supportably explained why he gave only some weight to the . . . assessments from [p]laintiff's teachers." Id. at 12, 16.

**B. Dr. Simionescu's Medical Opinion**

Dr. Simionescu completed a medical source statement on November 1, 2017, noting that he met with claimant on a monthly basis for medication management. See T. at 520-23. Dr. Simionescu diagnosed claimant with attention-deficit hyperactivity disorder, combined type; oppositional defiant disorder; and unspecified disorder of psychological development. See id. at 520.[5] Dr. Simionescu rated claimant's abilities to perform basic mental activities within each of the six domains of functioning, opining that claimant would have "extreme loss"[6] in multiple categories under the domain of "attending and completing tasks"; "marked loss"[7] and "moderate loss"[8] in multiple categories under the domains of "acquiring and using information," "interacting and relating with others," and "caring for yourself"; and "no/mild loss"[9] in multiple categories under the domain of "moving about and manipulating objects." Id. at 520-22. Dr.

---

[5] Dr. Simionescu appears to have used diagnosis codes from the International Statistical Classification of Diseases and Related Health Problems ("ICD"), a medical classification list published by the Worth Health Organization. See, e.g., International Statistical Classification of Diseases and Related Health Problems (ICD), WORLD HEALTH ORGANIZATION, https://www.who.int/standards/classifications/classification-of-diseases (last visited July 25, 2024).

[6] "Extreme loss" is defined in the check-box form to mean that there is a "[f]unctional limitation [that] interferes very seriously with a child's ability to independently initiate, sustain, or complete [the] named activity. (Valid test score three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain)." T. at 520.

[7] "Marked loss" is defined in the check-box form to mean that there is a "[f]unctional limitation [that] interferes seriously with the child's ability to initiate, sustain, or complete activities. (Equivalent of the functioning expected when standardized test scores are at least two, but less than three, standard deviations below the mean)." T. at 520.

[8] "Moderate loss" is defined in the check-box form to mean that there is a "[f]unctional limitation [that] causes some loss of [the child's] ability to initiate, sustain, or complete activities." T. at 520.

[9] "No/mild loss" is defined in the check-box form to mean that there is "[n]o significant loss of ability in the named activity." T. at 520.

Simionescu further described claimant's "health and physical well-being," noting that his conditions include "inattention, impulsivity, [and] oppositional behavior" but his functioning improved "in all domains" after taking medication.  Id. at 522-23.  Dr. Simionescu concluded that claimant "exhibits . . . known difficulties (bad to moderate to moderate – severe difficulties) in functioning in all settings [and he] needs ongoing treatment to monitor gains."  Id. at 523.

The ALJ found that "[l]ittle weight is given to the statement of treating psychiatrist Mihal Simionescu, M.D., who identified functional limitations variously from none to extreme limitation."  T. at 1081 (citing T. at 520-23).  The ALJ noted that,

> [a]lthough from a treating specialist who reported treating the claimant monthly, the doctor indicated the nature of the treatment relationship was only for medication management. The treatment records addressing the claimant's functioning significantly contradict the degree of restriction identified by this source, noting normal interaction and behavior with peers, teachers, and siblings, and successful completion of academic tasks.  Medication has significantly improved the claimant's attention and behavior.

Id. at 1081-82 (citing T. at 363, 463-64, 468-69, 520, 524, 587-88, 918, 932, 1551-53, 1575, 1584).

Plaintiff challenges the ALJ's assessment of Dr. Simionescu's opinion.  See Dkt. No. 16 at 9-13.  Plaintiff notes that "[t]he ALJ gave the following reasons for rejecting Dr. Simionescu's opinion: 1) the treatment relation was only for medication management; 2) his opinion is contradicted by records in Exhibits 14F, 16F, and 29F; and 3) medication has significantly improved [c]laimant's attention and behavior."  Id. at 10 (citing T. at 1081-82).   Plaintiff argues, however, that "[t]hese reasons do not constitute a legitimate reason, supported by substantial evidence, to reject Dr.

Simionescu's treating opinion."  Id.  Plaintiff contends that "[n]otably, this rationale

provided by the ALJ to reject Dr. Simionescu's opinion mirrors the earlier reasons

provided by the ALJs in the November 6, 2018 decision and April 12, 2021 decision";

"[t]hus, this reasoning is the same as what the Appeals Council previously found to be

flawed in its June 17, 2020 order."  Id.  Plaintiff asserts that, "[b]ecause Dr.

Simionescu's opinion as to [c]laimant's functioning is consistent with the record as

whole, greater weight should be given to his opinion[.]"  Dkt. No. 18 at 2.

### 1. Treating Physician Rule

For claims, like plaintiff's, that were filed before March 27, 2017, "the opinion of a

claimant's treating physician as to the nature and severity of the impairment is given

'controlling weight' so long as it is 'well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in the case record."  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015)

(citations omitted); see Mitchell v. Comm'r of Soc. Sec., No. 18-CV-38 (NSR/PED),

2019 WL 1472900, at *22 (S.D.N.Y. Mar. 8, 2019) (explaining that, when the ALJ is

conducting a continuing disability review for a child claimant, greater weight is accorded

to the opinions of treating physicians), report and recommendation adopted, 2019 WL

1470050 (S.D.N.Y. Apr. 3, 2019).  "[W]hen a treating source's opinion contradicts other

substantial evidence in the record, such as the opinions of other medical experts, an

ALJ may afford it less than controlling weight."  Samantha S. v. Comm'r of Soc. Sec.,

385 F. Supp. 3d 174, 184 (N.D.N.Y. 2019).

If an ALJ gives a treating physician's opinion less than controlling weight, he or

she must consider various factors in determining how much weight, if any, to give the

opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in the claimant's particular case.  See 20 C.F.R. §§ 404.1527(c), 416.927(c). "[A]n ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule."  Samantha S., 385 F. Supp. 3d at 184; see David E. v. Saul, No. 5:20-CV-466 (DJS), 2021 WL 1439668, at *4 (N.D.N.Y. Apr. 16, 2021) ("Where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the substance of the treating physician rule was not traversed, no slavish recitation of each and every factor" of 20 C.F.R. §§ 416.927 & 404.1527(c) is required.") (internal quotation marks and citations omitted).  "The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." Greek, 802 F.3d at 373 (internal quotation marks and citations omitted).

"[T]he ALJ is merely a fact-finder and, as such, has no ability to disregard a medical opinion without a contrary medical opinion or an overwhelmingly compelling circumstantial critique."  Amy C. v. Comm'r of Soc. Sec., No. 3:20-CV-0546 (ML), 2021 WL 1758764, at *8 (N.D.N.Y. May 4, 2021) (quoting Wagner, 906 F.2d at 861).  "[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."  Id. (citation omitted) (alteration in original).  "A circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion."  Id. at *9 (citation omitted).  The Second Circuit has

reiterated application of this standard.  See Riccobono v. Saul, 796 F. App'x 49, 50 (2d Cir. 2020) (summary order) ("And while the ALJ may have given appropriate reasons for not according controlling weight to some of the opinions of [the plaintiff's] treating physicians, she must still base her conclusion on some medical opinion or otherwise articulate the overwhelmingly compelling reasons for not doing so.").  This Court has continued to apply the overwhelmingly compelling standard because "[t]his requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable."  Ashley v. Comm'r of Soc. Sec., No. 5:14-CV-00040, 2014 WL 7409594, at *1 (N.D.N.Y. Dec. 30, 2014).  "While claimants are not entitled to have their treating physician's opinion be automatically controlling, '[they are] entitled to be told why the Commissioner has decided . . . to disagree with [the claimant's treating physician].'"  Id. at *2 (alterations in original) (quoting Rolon v. Comm'r of Soc. Sec., 994 F. Supp. 2d 496, 508 (S.D.N.Y. 2014)).

Here, as claimant's treating psychiatrist, Dr. Simionescu's opinion is entitled to application of the treating physician rule.  See, e.g., Santiago v. Comm'r of Soc. Sec., No. 19-CV-4001 (KPF/KNF), 2020 WL 6530884, at *7 (S.D.N.Y. May 5, 2020) (acknowledging that "a psychiatrist is a physician who specializes in the treatment of mental illness and emotional disorders," and, as such, is entitled to application of the treating physician rule), report and recommendation adopted sub nom. Morales Santiago v. Comm'r of Soc. Sec., 2020 WL 4463157 (S.D.N.Y. Aug. 3, 2020).  As an initial matter, the ALJ properly considered the "nature and extent of the treatment relationship" between Dr. Simionescu and claimant, noting that, "[a]lthough from a

treating specialist who reported treating the claimant monthly, the doctor indicated the nature of the treatment relationship was only for medication management." 20 C.F.R. § 404.1527(c)(2)(ii); T. at 1081. To the extent plaintiff challenges the ALJ's consideration of the "medication management" nature of the treatment relationship, such an argument is without merit. See Dkt. No. 18 at 1.[10] As the Commissioner contends, it was not erroneous for the ALJ to consider this as a factor when determining how much weight to give Dr. Simionescu's opinion. See Dkt. No. 17 at 12; see also Meyer v. Saul, No. 19-CV-0973L, 2020 WL 3489406, at *4 (W.D.N.Y. June 26, 2020) (upholding the ALJ's determination to give a treating physician's opinions "little" weight where, inter alia, the treating physician's "visits with plaintiff were brief, infrequent, and limited to the purpose of managing plaintiff's medications, which were almost always found to be effective and not in need of any adjustment"); Dukett v. Colvin, No. 5:14-CV-1435 (GLS/DJS), 2016 WL 4486170, at *2 (N.D.N.Y. Aug. 25, 2016) (upholding ALJ's decision to discount treating psychiatrist's opinion in part because "Dukett's relationship with her psychiatrist was limited . . . indeed, the relationship consisted of only medication management").

However, the remainder of the ALJ's single paragraph explanation regarding Dr. Simionescu's opinion "runs afoul of the treating physician rule." Agapito v. Colvin, No.

---

[10] Plaintiff also argues that the ALJ wrongfully gave more weight "to Dr. Grassl, who saw [c]laimant only on one occasion, and to the non-examining opinion of Dr. Williams," instead of Dr. Simionescu, a treating physician who had a longer treating relationship. Dkt. No. 18 at 2. "The fact that the ALJ gave more weight to the opinions of a one-time examiner and of a physician who never laid eyes on [claimant] than he gave to that of a physician who saw him frequently over a period of time is [a] reason to question the ALJ's decision." Reginald T. v. Comm'r of Soc. Sec., No. 6:20-CV-6252 (LJV), 2022 WL 1607024, at *2 n.8 (W.D.N.Y. May 20, 2022) (citing Estrella v. Berryhill, 925 F.3d 90, 98 (2d Cir. 2019) (The ALJ "should not rely heavily on the findings of consultative physicians after a single examination [because] a one-time snapshot of a claimant's status may not be indicative of [his] longitudinal mental health . . . The opinion of [a consultative examiner], in other words, [ ] does not provide a good reason for minimizing that of [a treating physician].") (internal quotation marks and citation omitted)). "Because [the undersigned recommends] remand[ing] on other grounds, however, [the undersigned declines to] reach the issue of whether the ALJ erred in crediting the opinions of consultants at the expense of the opinion of a treating physician." Reginald T., 2022 WL 1607024, at *2 n.8.

12-CV-2108 (PAC/HBP), 2014 WL 774689, at *18 (S.D.N.Y. Feb. 20, 2014); see, e.g., Ashley, 2014 WL 7409594, at *3 ("The ALJ's single, short and conclusory paragraph fails to clearly identify any significant deficits with [plaintiff's treating physician's] opinion or to address the required factors set forth by 20 C.F.R. § 404.1527(c)(1)-(6)"). Specifically, "[t]he ALJ did not provide 'good reasons' for his weight assessment of Dr. [Simionescu's] opinion."  Randall v. Berryhill, No. 3:17-CV-1354 (MPS), 2018 WL 4204438, at *6 (D. Conn. Sept. 4, 2018); see Santiago, 2020 WL 6530884, at *8 ("Since the record establishes that the ALJ's reasons for rejecting [the treating physician's] opinions were erroneous, those erroneous reasons cannot constitute good reasons for rejecting the opinion of [the plaintiff's] treating physician; thus, . . . the ALJ's decision is not supported by substantial evidence.").

First, the ALJ does not mention the "the length of the treatment relationship" between claimant and Dr. Simionescu.  20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated [the claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the ALJ] will give to the source's medical opinion.").  This constitutes error.  See Richardson v. Barnhart, 443 F. Supp. 2d 411, 418 (W.D.N.Y. 2006) ("I find that the ALJ erred in his analysis [because h]is decision did not address the length of the treatment relationship between Dr. Donahue and plaintiff[.]"); see also Hidalgo v. Colvin, No. 12-CV-9009 (LTS/SN), 2014 WL 2884018, at *20 (S.D.N.Y. June 25, 2014) (finding that the ALJ's assessment of the treating physician's opinion was "inadequate," where the ALJ failed to, inter alia, mention the length of the treatment relationship between the physician and the claimant); Steele ex rel. M.D. v. Astrue, No. 09-CV-347 (NAM/VEB), 2011 WL 3841534,

at *5 (N.D.N.Y. Aug. 10, 2011) (remanding where "[t]he ALJ twice indicated his belief that the treating relationship between [the c]laimant and Dr. Freshman was 'unclear'" but "[b]efore deciding how much weight to afford Dr. Freshman's opinion, it was incumbent upon the ALJ to seek clarification regarding the length of the treatment relationship"), report and recommendation adopted, 2011 WL 3841536 (N.D.N.Y. Aug. 29, 2011).

Second, the ALJ failed to discuss "what evidence supports" Dr. Simionescu's opinion. Adams v. Colvin, No. 6:14-CV-1540, 2016 WL 3566859, at *4 (N.D.N.Y. June 24, 2016); see C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that medical opinion."). Contrary to the Commissioner's contentions, the ALJ did not "note[ ] that Dr. Simionescu's opinion failed to reflect treatment notes—including the psychiatrist's own records—showing [claimant's] symptoms had significantly improved with ADHD medication." Dkt. No. 17 at 12-13. In fact, the ALJ failed to address the supportability of Dr. Simionescu's opinion at all. Cf. Heaman v. Berryhill, 765 F. App'x 498, 501 (2d Cir. 2019) (summary order) ("The ALJ here provided good reasons for giving the treating physicians' opinions less weight, including that their opinions were merely checkbox forms that offer little or nothing with regard to clinical findings and diagnostic results[.]") (internal quotation marks and citation omitted). This also constitutes error. See, e.g., Brown v. Colvin, No. 14-CV-2411 (KAM), 2015 WL 4878480, at *23 (E.D.N.Y. Aug. 14, 2015) (finding that the ALJ erred by failing to specify what evidence supported the treating physician's opinion).

Third, the ALJ failed to adequately address the "consistency" of Dr. Simionescu's opinion.  20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [an ALJ] will give to that medical opinion.").  The ALJ concluded that "[t]he treatment records addressing the claimant's functioning significantly contradict the degree of restriction identified by [Dr. Simionescu], noting normal interaction and behavior with peers, teachers, and siblings, and successful completion of academic tasks[,]" by citing to only three exhibits—14F, 16F, and 29F.  T. at 1081 (citing T. at 524, 587-88, 1551-53).  However, the ALJ did not further elaborate and, thus, did not sufficiently explain the consistency of Dr. Simionescu's opinion with the record as a whole.  See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); see, e.g., Randall, 2018 WL 4204438, at *7 ("The ALJ's failure to support any of [his] reasons [for rejecting the treating physician's opinions] with further analysis . . . prevents them from serving as 'good reasons' in support of his weight designation to [the treating physician's] opinions.").  Notably, although the ALJ cited to three treatment records that allegedly contradicted Dr. Simionescu's opinion, the ALJ failed to acknowledge other treatment records that are consistent with Dr. Simionescu's opinion.  See, e.g., Intonato v. Colvin, No. 13-CV-3426 (JLC), 2014 WL 3893288, at *14-15 (S.D.N.Y. Aug. 7, 2014) ("The only factor that the ALJ discussed explicitly when explaining his decision to discount Dr. Strassberg's opinion was its inconsistency with the record.  However, the ALJ gave short shrift to this analysis . . . [as] the ALJ provided no analysis beyond the conclusory statement that the opinions were inconsistent.").

Thus, the ALJ "appears not to have considered whether Dr. [Simionescu's] opinion was otherwise consistent with the record."  Intonato, 2014 WL 3893288, at *14-

15.  "This bare and conclusory analysis constituted error."  Serrano v. Colvin, No. 12-CV-7485 (PGG/JLC), 2014 WL 197677, at *17 (S.D.N.Y. Jan. 17, 2014); see Steficek v. Barnhart, 462 F. Supp. 2d 415, 420 (W.D.N.Y. 2006) (concluding that the ALJ erred where "the ALJ ignored . . . other evidence that was consistent with the opinions of" the plaintiff's treating psychiatrist and psychologist); see also Duncan v. Astrue, No. 09-CV-4462 (KAM), 2011 WL 1748549, at *24 (E.D.N.Y. May 6, 2011) (stating that the ALJ "cannot simply selectively choose evidence in the record that supports his conclusions") (internal quotation marks and citations omitted).

Moreover, the ALJ failed to explain how the records cited are actually inconsistent with the functional limitations opined by Dr. Simionescu.  See T. and 1081 (citing T. at 524, 587-88, 1551-53).  For example, exhibit 16F summarizes claimant's progress in a therapy program, noting that claimant "demonstrated improved self awareness"; has "not manifested aggressive behaviors for at least 10 weeks"; and "successfully reported application of learned skills such as deep breathing and mindfulness exercises to manage impulsivity."  Id. at 587-88.  However, as plaintiff points out, exhibit 16F also "documents that as of August 1, 2017, [c]laimant is noted as only having achieved 'sporadic completion' of an objective to successfully complete academic tasks without distraction" and it is further noted that claimant "continues to experience difficulty with concentration and consistency" even while taking medications.  Dkt. No. 16 at 12; T. at 587-88.  Thus, it is unclear how claimant's "sporadic completion" of academic tasks without distraction is illustrative of his "successful completion of academic tasks."  T. at 587-88, 1081.  Given the ALJ's limited explanation of exhibit 16F in comparison to Dr. Simionescu's opinion, "[t]he ALJ fails to explain how this record is

inconsistent with Dr. Simionescu's [opinion, specifically his] finding of marked limitations in acquiring and using information and marked to extreme limitations in attending and completing tasks."  Dkt. No. 16 at 12 (citing T. at 520-21); see Brown, 2015 WL 4878480, at *23 ("The ALJ, however, failed to specify which objective findings and evidence were inconsistent with or contradicted Dr. Chen's opinion . . . Accordingly, the case is remanded with further instruction to the ALJ to review the totality of the evidence in the record and if she declines to afford controlling weight to Dr. Chen's opinion, the ALJ shall . . . specify[ ] . . . [what] medical evidence support[s] or contradict[s] Dr. Chen's opinion with respect to plaintiff's limitations[.]").

Additionally, exhibit 29F includes a summary of a well-child medical visit that occurred on March 14, 2022, noting that claimant reported "he is doing well and denies any concerns regarding his body or his health."  T. at 1551.  Exhibit 29F also notes that claimant "eats meals with family, is able to make independent decisions and has family member/adult to turn to for help[; h]e has normal performance, has normal behavior, has normal attention and does homework regularly"; "[h]e has ways to cope with stress [and] displays self-confidence."  Id.  However, plaintiff argues that exhibit 29F mischaracterizes claimant's performance at school and, therefore, serves as flawed reasoning for rejecting Dr. Simionescu's opinion.  See Dkt. No. 16 at 10-12; see also Martinez o/b/o M.G. v. Commisioner of Soc. Sec., No. 16-CV-1153 (PKC/RLE), 2017 WL 9538863, at *6 (S.D.N.Y. Aug. 25, 2017) ("While the ALJ's decision need not mention every item of testimony presented or reconcile explicitly every conflicting shred of medical testimony, the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.") (internal quotation marks and citations omitted), report and

recommendation adopted sub nom. Martinez on behalf of M.G. v. Comm'r of Soc. Sec., 2017 WL 4232578 (S.D.N.Y. Sept. 22, 2017). Plaintiff contends that claimant's school records, in fact, support the limitations that Dr. Simionescu opined, asserting that

> [i]n Exhibit 49E, [claimant's] school reports reflect that he had seven school suspensions in 2021 to 2022 as a result of serious public space misconduct, confrontational and aggressive arguing, and name calling or offensive language. Two out-of-school suspensions occurred in March 2022, only a week after this well child visit. . . .
>
> Further, [c]laimant's [Individualized Education Plan ("IEP")] dated April 29, 2022 documents ongoing problems in [c]laimant's functioning. The IEP states that with his Writing class, "He often needs someone to redirect him to the task at hand and some support to keep doing." The IEP also noted that with his Math class, "He often tries to avoid attending Math or tries to skip each day which is impacting his progress." Further, the IEP indicates that [c]laimant "often has a difficult time understanding language in directions and in math word problems when there is a lot of language presented at once and also due to complex language that may be included."

Dkt. No. 16 at 10-11 (citations omitted). The ALJ failed to address this evidence in his assessment of Dr. Simionescu's opinion. See Hopkins v. Comm'r of Soc. Sec., No. 6:13-CV-1082 (GTS), 2015 WL 4508630, at *5 (N.D.N.Y. July 23, 2015) ("Although an ALJ need not discuss every shred of evidence, failure to discuss evidence that conflicts with an ALJ's finding prevents meaningful review."). As such, it appears the ALJ failed to "'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'" Hamedallah ex rel. E.B. v. Astrue, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) (quoting Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002)); see Greek, 802 F.3d at 376 ("Because the ALJ rested his rejection of [the treating physician's] opinion on flawed reasoning . . . , the ALJ erred.").

The ALJ also discounted Dr. Simionescu's opinion due to other treatment records demonstrating that "[m]edication has significantly improved the claimant's attention and behavior."  T. at 1081-82.  However, the ALJ does not explain how this specifically contradicts Dr. Simionescu's assessment of claimant's limitations.  See Dkt. No. 17 at 15 (acknowledging "an ambiguity in the record" as to claimant's improvement with medication); see also Mosley v. Comm'r of Soc. Sec., No. 20-CV-7940 (OTW), 2022 WL 16849101, at *5 (S.D.N.Y. Nov. 10, 2022) (remanding where "the ALJ fail[ed] to articulate how [certain records] were actually inconsistent with the treating physician opinions").  Accordingly, the ALJ erred by failing to adequately address and explain "how consistent [Dr. Simionescu's] opinion is with the record as a whole." Craven v. Apfel, 58 F. Supp. 2d 172, 182-83 (S.D.N.Y. 1999); see Gallishaw v. Comm'r of Soc. Sec., 296 F. Supp. 3d 484, 496 (E.D.N.Y. 2017) (finding that the ALJ erred where "she failed to explain how [a treating physician's opinion] was unsupported by medically acceptable evidence or inconsistent with other substantial evidence in the record").

Fourth, as plaintiff notes, the ALJ's rationale for rejecting Dr. Simionescu's opinion was questioned by the Appeal Council in its June 17, 2020, order.[11]  See Dkt. No. 16 at 10. In remanding the case back to the ALJ on June 17, 2020, the Appeals Council wrote:

> In evaluating the claimant's functioning, the [ALJ] concludes the claimant has less than marked limitations in acquiring and using information and health and physical well-being and no limitations in attending and completing tasks, interacting and relating with others, moving about and managing objects, and caring for himself.  However, the record contains later reports

---

[11] The undersigned notes that the ALJ used the same language regarding his assessment of Dr. Simionescu's opinion in the November 6, 2018, decision, the April 7, 2021, decision, and the January 6, 2023, decision.  See T. at 19, 605, 1081-82.  The only difference is that, in the ALJ's January 6, 2023, decision, the ALJ provided one additional citation to "new" evidence.  See id. at 1081.

from 2017 and 2018, which seemed to demonstrate a worsening in the claimant's functioning.

In particular . . . in November 2017, Mihal Simionescu, M.D., concluded that the claimant had a marked loss in the ability to become interested in new subjects and activities; apply learning in daily activities at home and in the community; use increasingly complex language to share information, ask questions, express ideas, and respond to the opinions of others; complete transition tasks without extra reminders or supervision; attach to adults other than his parents; share ideas, tell stories, and speak in a manner readily understandable by familiar and unfamiliar listeners; and demonstrate consistent control over behavior and avoid unsafe behaviors. The doctor also found that the claimant had an extreme loss in focusing attention in order to follow directions, complete school assignments, and remember and organize school-related materials; concentrate on details and avoid careless mistakes; change activities or routine without distracting self or others; and sustain attention well enough to participate in group sports, read alone, or complete chores. . .

Therefore, further evaluation is warranted.

T. at 665-66. Contrary to the Commissioner's assertions, the Appeals Council appeared to take issue with the fact that the ALJ concluded that "claimant has less than marked limitations in acquiring and using information" and "no limitations in attending and completing tasks, interacting and relating with others, and caring for himself," when Dr. Simionescu opined otherwise. See id.; see also Dkt. No. 17 at 13. The Appeals Council noted that "further evaluation is warranted"; yet, following this order, the ALJ did not change his language used to assess Dr. Simionescu's opinion. T. at 666; see id. at 19, 605, 1081-82. Instead, in his January 6, 2023, decision, ALJ Theurer cited to one additional treatment record, exhibit 29F. See id. at 1081. However, this additional citation does not satisfy the Appeals Council's instruction for "further evaluation," as the ALJ still fails to adequately explain how he reached his conclusion in spite of Dr.

Simionescu's opinion.  See, e.g., Parks v. Colvin, No. 15-CV-6500 (FPG), 2017 WL 279558, at *3 (W.D.N.Y. Jan. 23, 2017) ("The ALJ's failure to abide by the directives in an Appeals Council remand order constitutes legal error requiring remand.").

Accordingly, the undersigned recommends that the matter be remanded for the ALJ's failure to properly apply the treating physician rule in evaluating Dr. Simionescu's opinion.  See, e.g., Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.") (quoting Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)); Gavazzi v. Berryhill, 687 F. App'x 98, 100 (2d Cir. 2017) (summary order) (remanding where the ALJ failed to provide an "overwhelmingly compelling" justification for discounting the opinions of the plaintiff's treating physician); McLean v. Astrue, No. 08-CV-4989 (NGG), 2012 WL 1886774, at *7 (E.D.N.Y. May 23, 2012) ("In short, the ALJ provided nothing close to good reasons for the lack of weight he gave to [the treating physician's] opinion. Unfortunately, because of the ALJ's disturbingly empty analysis and disregard for the treating physician rule, [the plaintiff] will have to continue to wait for a reasoned decision on his application, as the court must now remand his case for a proper evaluation of [the treating physician's] opinion.") (internal quotation marks and citation omitted).

### C. Teacher Evaluations

On October 27, 2017, claimant's fourth-grade teacher submitted a "teacher/ school questionnaire," rating his abilities to perform basic mental activities within each of the six domains of functioning.  T. at 339-45.  As relevant here, his fourth-grade teacher noted that claimant would have "a very serious problem" completing activities within the

domain of "attending and completing tasks" and "a serious problem" completing activities within the domain of "acquiring and using information."  Id. at 339-40.

On September 6, 2020, claimant's sixth-grade teacher submitted another "teacher/school questionnaire," rating his abilities to perform basic mental activities within each of the six domains of functioning.  T. at 866-72.  Similar to the findings made by claimant's fourth-grade teacher, his sixth-grade teacher noted that claimant would have "a very serious problem" completing activities within the domains of "attending and completing tasks" and "acquiring and using information."  Id. at 866-67.  The sixth-grade teacher also stated that claimant would have "a very serious problem" completing activities within the domain of "interacting and relating with others."  Id. at 868.

On December 9, 2022, claimant's ninth-grade teacher submitted another "teacher/school questionnaire," rating his abilities to perform basic mental activities within each of the six domains of functioning.  T. at 1630-33.  Claimant's ninth-grade teacher noted that claimant has some problems within the domains of "acquiring and using information," "interacting and relating with others," and "caring for himself or herself."  Id. at 1630-31.  As plaintiff notes, however, this "questionnaire appears to be missing pages because there is no information on the domain of attending and completing tasks."  Dkt. No. 16 at 14.

The ALJ found that "[s]ome weight is given to the teacher questionnaires, which range from minimal limitations to serious limitations."  T. at 1082 (citations omitted).  The ALJ noted that "[d]espite the variability in teacher assessments, the claimant's teachers had the opportunity to observe the claimant on a regular basis and to compare his abilities and limitations to children of similar age in the same setting."  Id.  The ALJ

concluded that "[o]verall, these assessments are consistent with the opinion of medical expert, Aaron Williams, PsyD." Id. Plaintiff argues, however, that "[t]his finding by the ALJ is not supported by substantial evidence." Dkt. No. 16 at 14. Specifically, plaintiff notes that "Dr. Williams found a marked limitation in attending and completing tasks, and a less than marked limitation in acquiring and using information," but "[t]his differs from the marked limitations found by [claimant's fourth and sixth-grade] teachers . . . in both of the domains of attending and completing tasks and acquiring and using information." Id. (citing T. at 339-40, 866-67).

As the Commissioner points out, claimant's teachers are non-medical sources under the regulations and, thus, their opinions "'do not demand the same deference as those of a treating physician.'" Merritt W. v. Comm'r of Soc. Sec., No. 23-CV-0133 (LJV), 2024 WL 989706, at *4 n.5 (W.D.N.Y. Mar. 7, 2024) (quoting Genier v. Astrue, 289 F. App'x 105, 108 (2d Cir. 2008) (summary order)). However, "the ALJ was [still] required . . . to consider [the teachers'] opinion[s] and explain why (or why not) [he] found [the opinions] to be unpersuasive." Sandra C. R. o/b/o Y.E.O.C. v. Comm'r of Soc. Sec., No. 5:20-CV-0923 (GTS/DEP), 2021 WL 7287617, at *5 (N.D.N.Y. Nov. 12, 2021) (citing 20 C.F.R. § 416.927(f)) (additional citations omitted), report and recommendation adopted sub nom. Sandra C.R. on behalf of Y.E.O.C. v. Comm'r of Soc. Sec., 2022 WL 675710 (N.D.N.Y. Mar. 7, 2022).

Here, the ALJ briefly explained why he found the teachers' opinions to be entitled to "some weight." T. at 1082. However, the ALJ conclusorily states that the teacher "assessments are consistent with the opinion of medical expert, Aaron Willliams, PsyD," without reconciling the differences between the limitations that the teachers opined and

the "less than marked limitation" that Dr. Williams opined.  Id.; see Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 178 (N.D.N.Y. 2010) (finding error requiring remand where the ALJ failed to provide a sufficient rationale for rejecting opinions from the claimant's teachers); cf. Crouch ex rel. K.C. v. Astrue, No. 5:11-CV-820 (LEK/ESH), 2012 WL 6948676, at *8 (N.D.N.Y. Dec. 31, 2012) (finding no error in the ALJ's weighing of a teacher's opinion where it was clear the ALJ was aware of the correct legal standard and explained the basis for his finding that the opinion was inconsistent with other parts of the record), report and recommendation adopted, 2013 WL 316547 (N.D.N.Y. Jan. 28, 2013).  Thus, the ALJ erred.  See Webb o/b/o W.I.C.B. v. Berryhill, No. 17-CV-6105L, 2018 WL 3454687, at *3 (W.D.N.Y. July 18, 2018) ("Because the ALJ . . . failed to explain how [he] gave great weight [to the teachers'] opinion, yet failed to accept [their] conclusion that [the claimant] has serious or severe limitations in not one, but three functional areas, the most prudent course of action is to permit the ALJ to revisit this matter to reassess the claimant's limitations in those functional areas.") (internal quotation marks and citations omitted).

The ALJ also "note[d] that the assessment of the claimant's 9th grade teacher reflects significantly fewer problems and limitations than the claimant 6th grade teacher, suggesting improvement in the intervening 3 years."  T. at 1082.  However, as plaintiff argues, "the teacher's questionnaire appears to be missing pages because there is no information on the domain of attending and completing tasks."  Dkt. No. 16 at 14.  Thus, to the extent the ALJ relied upon this assessment, this constitutes error.  See Coppola v. Berryhill, No. 18-CV-599 (HBP), 2019 WL 1292848, at *19 (S.D.N.Y. Mar. 21, 2019) ("The ALJ is required 'affirmatively to seek out additional evidence . . . where there are

"obvious gaps" in the administrative record.'") (quoting Eusepi v. Colvin, 595 F. App'x 7, 9 (2d Cir. 2014) (summary order), and Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999)); see also Encarnacion ex rel. George v. Barnhart, No. 00-CV-6597 (LTS/THK), 2003 WL 1344903, at *2 (S.D.N.Y. Mar. 19, 2003) (finding that the ALJ erred by failing to obtain missing pages from an evaluation underlying the plaintiff's IEP).

Further, this was not harmless error because, contrary to the ALJ's findings, there appears to be evidence in the record demonstrating that plaintiff's behavior at school has not improved.  See, e.g., T. at 860 (noting that claimant had ten disciplinary offenses, including three in-school suspensions, between December 2018 and May 2019); T. at 860-61 (noting that claimant had eight disciplinary offenses, including one in-school suspension, between October 2019 and March 2020); T. at 899 (stating, in his 2017 IEP, that claimant "has a significant delay in attentional skills, which affect his involvement and progress in the general education curriculum"); T. at 1424 (explaining, in his 2018 IEP, that claimant "needs a lot of attention by the teachers due to behavior and academics"); T. at 1343-44 (noting that claimant had eleven disciplinary offenses, including five out-of-school suspensions, between October 2021 and May 2022).  Thus, it seems that the missing pages could have impacted the ALJ's ultimate determination. See Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec., No. 5:18-CV-0634 (TWD), 2019 WL 4573262, at *6 (N.D.N.Y. Sept. 20, 2019) ("The ALJ's treatment of the teacher questionnaire was not harmless error because Ms. Ostrander's opinion may have had an effect on the outcome of the case."); cf. Kayla D. o.b.o K.D. v. Kijakazi, No. 4:20-CV-00198 (HBB), 2022 WL 2070895, at *9 (W.D. Ky. June 8, 2022) ("While [the p]laintiff asserts that this missing portion [of a teacher questionnaire] is extremely prejudicial,

[the p]laintiff has not argued how the missing pages impacted the ALJ's ultimate determination.  As such, the error, if any error occurred, is harmless.").

Accordingly, because the ALJ failed to sufficiently explain why he found the fourth-grade and sixth-grade teachers' opinions entitled to some weight, and because the ALJ failed to address the missing pages from the ninth-grade teacher's opinion, remand is recommended.  See Nivia D. o/b/o P.L.D., 2019 WL 4573262, at *7 ("[T]he ALJ was responsible for reviewing all of the . . . evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. The Court's task is not to fill any gaps in the ALJ's analysis and reweigh that evidence. . . . In light of the foregoing, this matter therefore is remanded for further administrative proceedings[.]").

### D. Nature of Remand

Plaintiff argues that the ALJ's decision should be remanded for a calculation of benefits.  See Dkt. No. 16 at 15.  Specifically, plaintiff contends that

> [p]laintiff originally filed an appeal of the cessation of Claimant's child benefits on February 27, 2017.  Plaintiff's case has been remanded from Northern District of New York on two prior occasions.  As such, [p]laintiff has waited for over six years to resolve this matter. . . . [N]o useful purpose would be served by remanding this case.  The ALJ has continued in each of the three decisions to provide the same rationale to disregard Dr. Simionescu's medical opinion.  Because the Commissioner has failed to provide a legally supported decision, this case should be remanded for a finding of disability and a calculation of benefits.

Id. (citations omitted).

"A remand for calculation of benefits is warranted 'when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would

serve no purpose.'" Mortise v. Astrue, 713 F. Supp. 2d 111, 128 (N.D.N.Y. 2010) (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). Here, "because there is conflicting evidence the [undersigned] cannot conclude that a remand for further proceedings would inevitably lead to a determination of disability." Ronald P. v. Comm'r of Soc. Sec., No. 1:23-CV-08577 (JGK/GRJ), 2024 WL 3498503, at *5 (S.D.N.Y. July 2, 2024), report and recommendation adopted sub nom. Pinaud v. Kijakazi, 2024 WL 3498360 (S.D.N.Y. July 22, 2024). Notably, the "ALJ is not required to adopt" Dr. Simionescu's opinion, as the ALJ can decline to credit Dr. Simionescu's opinion upon providing "good reasons." Lawrence v. Saul, No. 19-CV-6167L, 2020 WL 5500535, at *4 (W.D.N.Y. Sept. 11, 2020); see Otts v. Comm'r of Soc. Sec., 249 F. App'x 887, 889 (2d Cir. 2007) (summary order) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (quoting Halloran, 362 F.3d at 32); see also Luciano-Norman v. Comm'r of Soc. Sec., No. 5:16-CV-1455 (GTS/WBC), 2017 WL 4861491, at *9 (N.D.N.Y. Sept. 11, 2017) (declining to remand for calculation of benefits where "the ALJ failed to properly evaluate the medical opinion provided by [the plaintiff's treating provider]," and holding that remand for further proceedings is necessary "for a proper assessment of [the treating provider's] statement"), report and recommendation adopted, 2017 WL 4857580 (N.D.N.Y. Oct. 25, 2017).

Therefore, the undersigned recommends remanding for further proceedings. See Cedeno v. Comm'r of Soc. Sec., 315 F. App'x 352, 353 (2d Cir. 2009) (summary order) ("[R]emanding only for a calculation of benefits would not be appropriate because the record does not present persuasive proof of [the claimant's] disability") (internal

quotation marks and citations omitted); <u>see also</u> <u>Feliciano v. Acting Comm'r of Soc.</u> <u>Sec.</u>, No. 20-CV-6183 (GRJ), 2022 WL 1597686, at *1-2 (S.D.N.Y. May 19, 2022) ("[W]hile the record strongly supports remand . . . because further evaluation and fact finding is required on remand[,] it [is] not appropriate to remand this case for calculation of benefits rather than for further administrative proceedings . . . because the ALJ should be given the opportunity to weigh the opinion of Dr. Nwokeji, the treating psychiatrist, in accordance with the treating physician rule and to make a finding about the weight to be given to his opinion").

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that the plaintiff's motion (Dkt. No. 16) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's decision be **REVERSED and REMANDED for further proceedings**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v.</u>

Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

      Date:  August 19, 2024
             Albany, New York

Christian F. Hummel
U.S. Magistrate Judge